IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ZANE SEIPLER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 cv 50257 |
| | ) | |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| CAPTAIN ANTON CUNDIFF, *et al.*, | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR PROTECTIVE ORDER

Non-parties Jeremy Bruketta, Christopher Jones, and Gregory Pyle have filed a motion pursuant to Fed. R. Civ. P. 26(c)(1)(A) for entry of a protective order that their depositions not proceed or, in the alternative, for supervision of discovery pursuant to Fed. R. Civ. P. 26(c)(1)(D) limiting the scope and time of their depositions.

#### INTRODUCTION

Plaintiff, Zane Seipler, alleges in this suit is that he was discharged from his employment as a patrol deputy by the McHenry County Sheriff's Department in retaliation for his internal and public complaints regarding alleged corruption within the Sheriff's Office. Specifically, Seipler alleges that he complained loudly and frequently that deputies within the Department were engaging in racial profiling in making traffic stops in the County in order to inflate the number or arrests for quota purposes. It is inferred that by targeting black and Hispanic drivers, the involved deputies assumed they would find more undocumented aliens and, thereby, more unlicensed drivers.

Seipler's current pleading alleges both individual capacity claims against various command staff and supervisors within the Sheriff's Office as well as *Monell* claims against the County and its

Sheriff. Regardless, it is well-established that in order to prove a case of retaliatory discharge Seipler must demonstrate that: (1) he engaged in protected expression; (2) that he suffered a materially adverse employment action; and (3) that there is a causal relationship between the protected speech and his termination. *See Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).

The individuals intervening by way of this motion are not in a position to discuss the merits of Seipler's claims against the Sheriff's Office. However, it is the position of all three movants that the taking of their depositions is not reasonably calculated to lead to the discovery of admissible evidence and that the depositions are being interposed for improper purpose. The movants assert that their depositions are motivated out of personal animus, Seipler has identified them as wrongdoers, because none of them are decision-makers who can offer relevant or admissible testimony.

**FACTUAL BACKGROUND**

Seipler alleges that he complained about racial profiling within the Sheriff's Department and subsequently a pattern of retaliation that went through much of 2008 and culminated in his termination on November 17, 2008. What is not apparent from the face of his complaint is that two of the deputies Seipler accused of engaging in racial profiling were movants Jeremy Bruketta and Christopher Jones. Moreover, one of the individuals that Seipler alleges was promoted to sergeant ahead of him (see, *e.g.*, Second Amended Complaint, ¶ 48), is movant, Gregory Pyle.

What is also missing from Seipler's complaint is any reference to the very well-publicized animosity between Seipler, the Sheriff's Office and its deputies. A website run by a McHenry County resident, Gus Philpott, has been very critical of the Sheriff's Department and served as a platform for Seipler, even backing his election run against the incumbent sheriff in 2009. (See,

www.woodstockadvocate.blogspot.com).  Seipler started his own website in which he sought to expose alleged corruption within the Sheriff's Department.  The site often made inflammatory statements to the effect that the Sheriff and many in the Department were liars and corrupt.  (See, www.mcsdexposed.blogspot.com).  A third website appeared anonymously under the name of "Sir Pumkin [*sic*] Longshanks."  This site was crude and included a great deal of vulgarity, accusing Seipler of being mentally unstable and on a personally motivated vendetta.  All three of these sites involve public discourse about public employees and matters of public concern all protected by the First Amendment.  (The Sir Pumpkin Longshanks blog has been removed from the internet and is no longer publicly available.)

There is no disputing that the majority of the employees of the Sheriff's Department have no love lost for Zane Seipler and that he does not care much for many of them.  In fact, perusal of the blogs leads the reader to the conclusion that many of his former co-workers believe Seipler to be delusional at best and a pathological liar at worst.  The internet is, however, not the only source from which these conclusions may be drawn.

In another suit pending before this court, *Pavlin v. McHenry County, et al.,* No. 09 C 50154, Bruketta, Jones and Pyle are all named defendants.  That suit alleges that on March 14, 2008, Sheriff's deputies illegally entered the Pavlins' home, used excessive force to arrest them and subsequent conspired to falsify police reports to hide their lack of probable cause.  Seipler's counsel in that case, Louis Meyer, has produced information ostensibly provided to him by Seipler (either directly or through his counsel in the instant matter), to the effect that Seipler overheard deputies conspiring to falsify police reports on the Pavlin incident and that Bruketta and Jones "confided" to him that they had no probable cause to enter the Pavlins' house in the first instance.  More

importantly, Bruketta, Jones and Pyle have all been deposed in the *Pavlin* case and have been questioned under oath regarding their knowledge of racial profiling, their knowledge of Seipler and his allegations against them. For example, Sgt. Pyle was involved in the following exchange during his deposition:

> Q. Do you have an opinion of Mr. Seipler?
> A. Yes, my own opinions.
> Q. And do you have any problems with Zane Seipler?
> A. Personally he's never done anything to me.
> Q. Well how about professionally?
> A. I think he committed a criminal act on the job and shouldn't be employed.
> Q. And what was that?
> A. He perjured himself by signing a citation that was issued to a passenger in the vehicle issued as the driver.

(Pyle deposition, case no. 09 C 50154, pp. 105-06).

In the instant matter, counsel for both Seipler and Defendants were notified on November 2, 2010, that the movants had retained counsel to represent them in the matter of their depositions in this case. On November 3, 2010, counsel for Seipler provided movants' counsel with copies of notices of depositions, copies of which are attached and incorporated by reference, for all three of them. Additionally, movants' counsel spoke with Seipler's counsel to discuss differences regarding both the relevance and scope of these depositions. In that telephone conversation, counsel for movants was told that Bruketta and Jones were two of the deputies alleged to be engaged in racial profiling and that Seipler had been provided with copies of the "thousands" of traffic citations the two had written during the years 2007 and 2008. Further, Seipler's counsel indicated that he would need to depose each of the two for at least six hours in order to go through each traffic citation "one by one" to establish a pattern of racial profiling.

As to movant Pyle, counsel for Seipler indicated the desire to depose him for the purpose of establishing whether he was or knew who was Sir Pumkin Longshanks, and for other matters "similar to Jones and Bruketta."

In an effort to obviate the need for these depositions, movants' counsel offered to provide copies of the depositions of all three taken in the *Pavlin* matter, since all three had been questioned about Seipler and his allegations of both racial profiling and allegations regarding the facts of the Pavlins' suit. Seipler's counsel indicated only that he was not interested in what was said in what was, in his view, an unrelated case. Moreover, when it was suggested that if the depositions were to proceed they should occur within the Western Division of this Court rather than in downtown Chicago, Seipler's counsel would not agree. The discussion between counsel concluded with the understanding that the movants would either be produced at the noticed times and location, or the appropriate motion would be filed.

### LEGAL STANDARD

Fed. R. Civ. P. 26(c)(1) provides that:

> ...The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery; . . .
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain maters.

Whether to enter a protective order and, if so, its scope, lies within the court's discretion. *Seattle Times Co. v. Rinehart,* 467 U.S. 20, 36 (1984). Only good cause is required in determining whether to issue a protective order. *Id.* at 37. "Good cause 'is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action.'" *Wiggins v. Burge,* 173 F.R.D. 226, 229 (N.D.Ill. 1997) (citations omitted). In deciding whether good cause exists, the

court must balance the interests of the parties or persons, taking into account the harm to the party or person seeking the protective order and the importance of disclosure to the non-moving party. *Id.* The party or person seeking the protective order has the burden of showing that good cause exists by alleging particular and specific facts. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 fn. 16 (1981).

**ARGUMENT**

Seipler's counsel has expressly made it clear that his reason for seeking the depositions of the movants is to try to establish whether each actually engaged in any of the wrongful behavior Seipler has alleged. As noted at the outset, in his retaliatory discharge case, Seipler will need to establish that he engaged in protected expression; that he suffered a materially adverse employment action and that there was a causal relationship between the protected speech and his termination. *Supra.* Movants are unaware of any authority which stands for the proposition that whether the protected speech was true and correct has any bearing on Seipler's case. To the contrary, it is well settled that whether Bruketta, Jones and Pyle engaged in the misconduct alleged or the Sheriff's Department covered it up is not relevant to his claims. *See Horowitz v. Board of Edu. of Avoca School Dist. No. 37,* 260 F.3d 602, 612 (7th Cir. 2001) (finding that although plaintiff's underlying discrimination claim failed, plaintiff could still pursue a claim that she was retaliated against for complaining about age discrimination); *Place v. Abbot Laboratories,* 215 F.3d 803, 806 (7th Cir. 2000) (finding that "[a] plaintiff whose underlying discrimination claim fails may still prevail on a claim that she was retaliated against for complaining about discrimination.").

Further, it is clear that Seipler's counsel already has the traffic citations written by movants for the relevant time period as well as the Sir Pumkin Longshanks blog, in which Seipler was a

participant. It is also undisputed that Pyle, Bruketta and Jones are all members of the Sheriff's Department collective bargaining unit, are not decision-makers, and that none has any direct knowledge of the incident in November, 2008, proffered as the Sheriff's reason for terminating Seipler. None of the three has had any input into any of the decisions regarding Seipler's promotion, demotion, change in duty assignments or termination. In other words, there is absolutely no relevant information to be gained from the taking of any of these depositions.

Rather, it appears to movants that any evidence adduced from these depositions would be inadmissible at trial pursuant to Fed. R. Evid. 403. For example, the public discourse reflected in the Sir Pumkin Longshanks blog reflects opinion on matters of public issue, all of which occurred after Seipler's termination and cannot be attributed to the Sheriff's Department, especially if written by Pyle, who has no authority to speak on behalf of his employer. Even construing the blog as retaliatory, it remains irrelevant as a post-termination activity. *Reed v. Shepard,* 939 F.2d 484, 492-93 (7th Cir. 1991). As such, it has no probative value as to any of the elements of Seipler's claim and would only serve to inflame a jury and embarrass the author.[1]

The same is true of having Jones and Bruketta submit to hours of questions regarding the racial or ethnic background of everyone to whom each wrote a ticket for two years. Such evidence has absolutely no probative value on the question of whether Seipler was fired because he wrote a false criminal complaint or for retaliatory reasons.

Neither would any of the movants' opinions of, or conversations with, Seipler be relevant or admissible. Since none of the movants are decision-makers, testimony or comments made to or

---

[1] Additionally, the blog is hearsay and does not fit within any of the exceptions to the hearsay rule which would make it admissible, and it is protected expression under the First Amendment as public discourse about public employees. *See Pickering v. Board of Edu.,* 397 U.S. 563, 568 (1968); F.R.E. 801 *et. seq.*

by them regarding Seipler's allegations are neither relevant nor evidence. *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1031 fn 15 (7th Cir. 2004).

Finally, in order for Seipler to establish a causal connection between his termination and his complaints about the Sheriff's Department, "[t]he critical inquiry is whether the decision-makers were prompted by a retaliatory intent or motive at the time of the employment action." *Wagner v. Caterpillar, Inc.,* No. 97-1475, 1997 WL 625966, *11 (7th Cir. 1997) (*citing Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 149 (7 Cir. 1994). Again, since none of the movants are even tangentially involved in the decision-making process, their testimony is wholly unnecessary.

What is known is that Seipler has been cooperating with plaintiffs' counsel in the *Pavlin* matter by providing information and allegations. It is also abundantly clear that there is a great deal of personal animus, flowing both ways, between Seipler and the movants. Absent relevance, it may be reasonably inferred that the reasons for wanting these depositions are to either personally annoy, embarrass, burden and cause undue expense to the movants or, in the alternative, to obtain a second bite of the apple by deposing them a second time in a different case about the same subject matter.

Plaintiff in this case has alleged that his allegations of profiling were investigated by both the Sheriff's Department and, at his own urging, the Illinois State Police and the F.B.I. (See Second Amended Complaint, ¶¶ 31, 33, 38, 42 and 49). While Seipler might find it desirable to conduct his own investigation through this lawsuit, it should not be done at the unnecessary and improper expense of non-parties who cannot testify at trial.

The movants seek a protective order from this Court forbidding the depositions of Christopher Jones, Jeremy Bruketta and/or Gregory Pyle. In the alternative, if the court allows the depositions of any of the movants, that the length and scope of each be limited to that which is

demonstrably relevant and necessary to Seipler's case (or at least calculated to lead to relevant evidence) and that it be ordered to occur within the Western Division at a mutually agreeable time and place.

## Conclusion

For all of the reasons set forth in this memorandum it is respectfully submitted that this Court grant Bruketta's, Jones', and Pyle's request for a protective order prohibiting the taking of their depositions in this case. Alternatively, Bruketta, Jones, and Pyle request that this Court enter a protective order limiting the length and subjects of inquiry of their depositions.

      /s/ Stephen E. Balogh
         Attorney for
         JEREMY BRUKETTA, CHRISTOPHER JONES, &
         GREGORY PYLE
         WilliamsMcCarthy LLP
         120 W. State St., Suite 400
         Rockford, IL 61101
         Telephone: (815) 987-8946
         E-mail: sbalogh@wilmac.com

<u>CERTIFICATE OF LAWYER</u>

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned certifies that on November 5, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ Stephen E. Balogh

Stephen E. Balogh, Esq.
WilliamsMcCarthy, LLP
120 West State Street, Suite 400
P.O. Box 219
Rockford, IL 61105-0219
815-987-8900