## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| ZANE SEIPLER, | |
| Plaintiff, | Judge Kapala |
| v. | Magistrate Judge Mahoney |
| CAPTAIN ANTON CUNDIFF, LIEUTENANT JOHN MILLER #1431, LIEUTENANT WILLIAM LUTZ, SERGEANT POPOVITS, KATHLEEN SIETH, KEITH NYGREN, individually and in his official capacity as SHERIFF OF MCHENRY COUNTY, and the COUNTY OF MCHENRY, | No. 08-cv-50257 |
| Defendants. | |

## PLAINTIFF'S MOTION FOR SANCTIONS

NOW COMES the Plaintiff, ZANE SEIPLER, by his attorneys, Blake Horwitz from the Blake Horwitz Law Firm, Ltd., and hereby moves this Honorable Court to grant this Motion for Sanctions. In support of said Motion, the Plaintiff states as follows:

1. Defendants have refused to tender legitimate discovery responses causing significant delay in the completion of discovery. Defendants have twice violated this Court's protective order. This improper conduct before this Federal court should cease.

2. Plaintiff was fired for reporting racial profiling relative to his fellow officers. Defendants in every deposition, pleading and representation to this Court have denied that racial profiling ever occurred. Now, Defendants are investigating

1

      fifty-one (51) officers for racial profiling[1] and have admitted that they failed to tender data regarding 5,000 traffic stops covering a two (2) year time period.

3. Over one year ago, Defendants tendered, *inter alia*, racial profiling data regarding traffic stops from 2007 to 2008. Plaintiff using this data has engaged in over one-hundred fifty (150) hours of discovery relying upon this data. Now, Defendants have advised that the data that Plaintiff relied upon was faulty and refuse to reproduce Defendants for depositions[2] even though Plaintiff relied upon this data for these depositions. Perhaps Defendants thought that they could get away with non-disclosure of this vital information; however, this scheme unfolded when Plaintiff requested the source data from which the racial profiling data was originally ascertained[3]. The new data reveals 5,000 arrests never before tendered – clearly indicating that the initial disclosures were a sham.

## PLAINTIFF'S REQUEST FOR SANCTIONS PURSUANT TO 28 U.S.C.A. SECTION 1927

4. 28 *U.S.C.A.* § 1927 mandates that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 *U.S.C.A.* § 1927 (2009).

5. "Unreasonable and vexatious" conduct includes a range of bad faith tactics to delay and interfere with discovery. According to *The Jolly Group, Ltd. v. Medline*

---

[1] As of January 14, 2011, an investigation has begun whereby 51 officers are being investigated for racial profiling and the generation of false information regarding racial profiling data.
[2] See Plaintiff's Motion to Compel also set for hearing on January 21, 2011.
[3] In late December 2010 and early January, 2011, Plaintiff and defense counsel were able to exchange many e-mails and conversations, including phone meetings with representatives from McHenry County, wherein Plaintiff's counsel was ultimately able to gather the data that was previously missing by receiving data files (excel spread sheets) which contained over 5000 traffic stops not previously tendered for the years 2007 and 2008.

*Industries, Inc.,* 435 F.3d 717, 720 (7th Cir.2006), sanctions are appropriate when an attorney has acted in an "objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice… or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." (Internal quotations and citations omitted). For example, a party who "did not merely fail to provide responses within thirty days of being served with the discovery demands" but "delayed producing complete responses until the day before a hearing concerning the failure to comply with court-ordered deadlines" was guilty of unreasonable and vexatious conduct that satisfied 28 U.S.C.A. § 1927 and resulted in sanctions for the additional expenses incurred in *Carr v. Queens Medical Group*, 2003 WL 169793 (S.D.N.Y. 2003)[4].

6. Defendants' failure to comply with discovery, tendering incorrect data for over eighteen (18) months of litigation unreasonably multiplies the proceedings in a manner sufficient to justify an award of costs, expenses, and attorney's fees pursuant to section 1927. Hence, Plaintiff prays for an award of attorney fees in this regard.

**PLAINTIFF REQUESTS THAT DEFENDANTS
PAY REASONABLE EXPENSES UNDER RULE 37(A)**

7. Federal Rule of Civil Procedure 37 states that "[i]f a party… fails to obey an order to provide or permit discovery… the court where the action is pending may issue further just orders." *Fed R. Civ. Pro*. 37(b)(2)(A).

---

[4] Plaintiff can not assert that Defense counsel caused the faulty discovery disclosures but believes that counsel's client in fact has intended this result. Regardless, Plaintiff believes that 28 U.S.C.A. SECTION 1927 should apply by analogy as the actions occur as a result of the client.

3

8. Federal Procedure Rule 37(a)(4) provides that an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, respond, or answer. *Fed R. Civ. Pro.* 37(a)(4).

9. The court in *David v. Caterpillar,* provides a list of factors to "guide the court's discretion" in determining whether a violation of the discovery disclosure requirements is justified or harmless: "(1) prejudice or surprise to party against whom evidence is offered; (2) ability of party to cure prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness involved in not disclosing evidence at an earlier date." 324 F.3d 851, 856 (7th Cir.2003).

10. Defendants should be required to pay reasonable expenses incurred in making this motion, including attorney's fees, pursuant to *Fed. R. Civ. Pro.* 37(a)(5)(a). Defendants should further be required to pay the reasonable expenses incurred in pursuit of Plaintiff's investigation as to the hidden racial profiling data and for any and all other discovery that needs to take place subsequent to the prosecution of this motion that would not have otherwise been required if Defendants had properly tendered the discovery *ab initio*.

## RULE TO SHOW CAUSE

11. Defendants have violated this Court's order twice. Defendants have allowed data bound by a Protective Order to be released to non-parties to this action. The first violation occurred in connection with the release of police records concerning the Plaintiff[5]. The second violation occurred recently wherein the deposition of Deputy Milliman was released to a local McHenry County newspaper, The

---

[5] Defendants admitted that the reports were released to a non-party and then ultimately, it was disseminated to police officers throughout the department. The report was exclusively bound by the protective order to this cause.

4

Northwest Herald. In the article, the newspaper editor went into extreme detail as to the allegations of Deputy Milliman, ultimately ridiculing him and comparing him to a character on Sesame Street[6] who generates delusional accusations. Plaintiff hereby requests that this Court enter an order for a Rule to Show Cause requesting why Defendants should not be held in contempt for their repeat failure to comply with this Court's Protective Order.

WHEREFORE, the Plaintiff request that this Court order sanctions against Defendants, consistent with this Motion and enter an order for a Rule to Show Cause requesting why Defendants should not be held in contempt and for any alternative relief deemed just.

Respectfully submitted,

s/Blake Horwitz_____
Attorney for the Plaintiff

Blake Horwitz, Esq.
20 S. Clark St. Suite 500
Chicago, Illinois 60603
Ph (312) 676-2100
Fax (312) 372-7076

---

[6] The editor of the Northwest Herald is a well known supporter of Sheriff Nygren. Apparently, Defendants released Deputy Milliman's deposition to the editor. This release of Deputy Milliman's deposition transcript was made long before this Court's order allowing the Motion to Extend to be made available to the general public. The Northwest Herald editor in turn made callous and highly prejudicial remarks regarding deputy Milliman, comparing him to a character on Sesame Street, a popular children's television show, so as to diminish the impact of Deputy Milliman's heavily laden criminal allegations regarding Sheriff Nygren. Plaintiff shall submit exhibits if necessary to prove that the article was published in The Northwest Herald.