**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ZANE SEIPLER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 50257 |
| | ) | |
| vs. | ) | **Judge** |
| | ) | **Frederick Kapala** |
| | ) | |
| CAPTAIN ANTON CUNDIFF, et al., | ) | |
| | ) | **Magistrate Judge** |
| Defendant. | ) | **P. Michael Mahoney** |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This case involves claims that Plaintiff was harassed and eventually terminated from his

employment with the McHenry County Sheriff's Office ("MCSO") in retaliation for asserting

First Amendment rights. The parties in this case have been engaged in discovery since March of

2009, and the discovery process is nearing its close. Before the court are seven motions

regarding discovery or sanctions that have been filed by the parties. The court has considered

the materials submitted by the parties and will now rule.

**I.       Defendants' Motion for Sanctions and Supplemental Motion for Sanctions**

Plaintiff's case concerns allegations that he was discriminated and retaliated against by

his employer, the McHenry County Sheriff's Office ("MCSO"), because of his complaints about

racial profiling within the Department. Defendants allege that Plaintiff or Plaintiff's counsel has

violated a court order regarding discovery. A similar allegation was made by Plaintiff earlier in

the lawsuit.

On June 13, 2011, Defendants claimed in a motion for sanctions for violation of a court

1

order that Plaintiff or Plaintiff's counsel somehow caused materials designated as confidential by an agreed protective order to be published on a blog identified as http://www.realmcsoexposed.blogspot.com.  The documents published included more than 50 pages from disciplinary files of employees of the MCSO that had been exchanged through discovery and specifically marked as confidential through an amended protective order signed by the court on August 10, 2010.  Defendants' allegation that it was Plaintiff or Plaintiff's counsel who published the documents was supported by their belief that the documents on the blog contained certain identifying marks or redactions made by Defendants' counsel that were identical to those contained on documents provided solely to Plaintiff's counsel.  In other words, Defendants allege that Defendants' counsel, Plaintiff's counsel, and Plaintiff were the only parties to posses the documents that showed up on the blog.  By their motion, Defendants asked the court to order Plaintiff, Plaintiff's counsel, or both, to pay for the reasonable attorney's fees associated with Defendants' motion, and further asked that Plaintiff be prohibited from using any of the disclosed disciplinary materials as evidence in Plaintiff's case.

In response to Defendants' June 13, 2011 motion, Plaintiff and Plaintiff's counsel denied that evidence existed tying them to the blog in question; instead suggesting that it was a person related to the Defendants who published the documents.  Plaintiff provided an affidavit stating that he had no knowledge of the owner of the website http://realmcsdexposed.blogspot.com, did not disseminate the documents in question to any individuals, and did not know how the documents had been obtained by the blog's owner.  Plaintiff's counsel, attorneys Horowitz and Bunsal, each provided similar affidavits.  However, counsel's affidavits listed the website http://mcsdexposed.blogspot.com.

2

Defendants continued to pursue the matter, and filed a supplemental motion for sanctions on August 11, 2011. The reason for the supplemental motion was that Defendants had received responses to subpoenas issued to Google and Yahoo! concerning the owner of "The Real MCSO Exposed" blog and various email addresses tied to Plaintiff. Based on the newly obtained evidence, Defendants now seek sanctions in the form of dismissal of Plaintiff's case with prejudice, plus fees and costs associated with their motion. In response to the supplement, Plaintiffs argue that Defendants' evidence relates to a different website than the one alleged to have posted the confidential documents.

Rule 37 of the Federal Rules of Civil Procedure allows for the dismissal of proceedings, in whole or in part, based on a failure to obey a discovery order of the court. FED. R. CIV. P. 37(b)(2)(C). The court also has an inherent authority to dismiss a case in order to rectify abuses to the judicial process. *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). The sanction of dismissal is severe relative to the sanctions available under Rule 37. *Bryden v. Boys and Girls Club of Rockford*, No. 09 C 50290, 2011 WL 843907, at *2 (N.D. Ill.Mar. 8, 2011). Dismissal based on the court's inherent authority is perceived as a "draconian" measure that should be employed sparingly. *Dotson*, 321 F.3d at 667. The court should consider "the egregiousness of the conduct in question *in relation to all aspects of the judicial process.*" *Id.* (quoting *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993)). The court may impose the sanction of dismissal "where it finds flagrant bad faith and callous disregard for litigation responsibilities on the part of a party or its counsel." *Bryden*, 2011 WL 843907, at *2. The Seventh Circuit has not yet resolved whether the court's finding must be premised on clear and convincing evidence or simply a preponderance. *Watkins v. Nielsen*, 405 Fed. Appx. 42, 45 (7th Cir. 2010); *see also*

*JFB Hart Coatings, Inc. v. AM General LLC*, 764 F.Supp.2d 974, 981 (N.D. Ill. Feb. 8, 2011).

The allegations in Defendants' motion are based around a particular website, which they refer to as "The Real MCSO Exposed" blog.  In their briefs on this matter, the parties have repeatedly confused and misstated the web address allegedly linked to this website, making it difficult to delineate between mere mistake and honest disagreement.  Web addresses, like physical addresses or telephone numbers, can lead to entirely different locations based on a single character change.  As has been observed in cybersquatting cases, it is not uncommon for parties to deliberately set up web addresses substantially similar to competitors in order to confuse or misdirect.  *See, e.g., uBID, Inc. v. GoDaddy Group, Inc.*, 623, F.3d 421 (7th Cir. 2010).  The court will begin by attempting to sort out the various web addresses alluded to by each party.

In Defendants' original motion, they point to alleged evidence of Plaintiff's disdain for the protective order entered in this case from a blog post made on May 2011.  Defendants cite to and attach exhibits from Plaintiff's alleged website, which is listed as "http://mcsdexposed.blogspot.com."  The motion goes on to describe the website that the confidential documents were posted on as "http://www.realmcsoexposed.blogspot.com."  In response, Plaintiff and Plaintiff's counsel submitted the above-described affidavits that referenced "http://realmcsdexposed.blogspot.com" and "http://mcsdexposed.blogspot.com," respectively.  Plaintiff's response also references "http://shadowmcsd.blogspot.com/" as another location where confidential documents were being posted.

Attached to Defendants' supplemental motion was a subpoena to Google requesting documents regarding the user account associated with

4

"http://www.realmcsoexposed.blogspot.com."  According to Exhibit B of Defendants'

supplemental motion, Google responded with information apparently indicating that the email

address "sknout4good@gmail.com" was used to created the blog responsive to the subpoena

request.  Plaintiff allegedly acknowledged that he created this email address.  Google's response

also references a "User's Trashed Blog" named "The Real MCSD" with a web address of

"http://mcsoexposed.blogspot.com."  In an apparent attempt to point out this discrepancy,

Plaintiff's response to the supplemental motion references "www.mcsdexposed.com" as being

different from "www.realmcsdexposed.com."

Finally, in reply, Defendants assert that their evidence from Google and Yahoo! tie two

of Plaintiff's email addresses to "http://www.realmcsoexposed.blogspot.com."  Defendants

assert that the email address "sknout4good@gmail.com" was created on November 2, 2009

listing Plaintiff's alleged personal email ("zaneseipler@yahoo.com") as a secondary email

address.  Five minutes later, "sknout4good@gmail.com" was used to create the blog

"http://www.realmcsoexposed.blogspot.com".  Defendants have evidence indicating that both

email addresses and the blog have been logged in to from the same IP address, 98.206.53.78.

Defendants also attach information from a second subpoena to Google indicating that the email

address "shadow.mcsd@gmail.com", which is allegedly affiliated with the second blog that

posted confidential documents ("http://shadowmcsd.blogspot.com/"), was created on June 18,

2011 from the same IP address.

In summary, the parties have fully briefed two motions regarding this issue.  Their briefs

have referred to no fewer than seven distinct web addresses.  Defendants' arguments and

exhibits seem to allege that Plaintiff is or was behind at least four different blogs.  At least two of

the blogs have posted confidential documents that apparently originated through discovery in this case. However, Defendants' task of proving that the confidential documents were posted to the blogs by Plaintiff is more difficult. One particular IP address has been linked to the three email addresses and the two accused blogs. This is circumstantial evidence that it was Plaintiff who actually posted the documents. According to Google, Plaintiff's email ("sknout4good@gmail.com") was created from a different IP address in 2009. No IP address was listed for the 2009 creation of "http://www.realmcsoexposed.blogspot.com". The blog postings of confidential documents from June 6, 2011 indicate that they were "Posted by Vera", while the similar June 2, 2011 postings were "Posted by Admin", though the evidence from Google appears to list May 27, 2011 as the most recent log-in activity for the Blogger.com account associated with Plaintiff's email. In short, there is circumstantial evidence that Plaintiff is or has been involved with the blogs in question, and circumstantial evidence that it was Plaintiff who posted the confidential documents to the particular blog.

Plaintiff does not appear to have directly responded to Defendants' claims due to the varying web addresses listed in his briefs and affidavits attached thereto. The court cannot make a determination as to which of the various web addresses represent real websites relevant to Defendants' motions, which serve as deliberately evasive responses or confusing distractions, and which are the product of simple error on behalf of the parties.

It is unfortunate that on multiple occasions non-parties to this litigation appear to have been affected by the release of documents intended to be kept confidential. As the court found when deciding Plaintiff's motion for a rule to show cause filed on January 18, 2011, there is no definitive evidence of an intentional violation of a protective order or discovery order in this

6

case.  The court finds that the circumstantial evidence accompanying Defendants' allegations

rises to a level where the sanction of dismissal merits consideration.  The potential for a

dispositive ruling requires these motions to be transferred to the District Court for further ruling.

*See Egan v. Freedom Bank, et al.*, No. 10-1214, slip. op. at 11 (7th Cir. Oct. 6, 2011).  Should

the District Court determine that this motion does not merit dismissal of the case, it may of

course decide if any sanction is appropriate or return the matter to the Magistrate Judge for

further consideration.

        **II.**      **Plaintiff's Motion to Bar Testimony**

Plaintiff's motion to bar the testimony of recently disclosed witnesses from Google and

Yahoo! is also transferred to the District Court.  This motion relates directly to Defendants'

allegations as to the release of documents.  The District Court may or may not find further

testimony on this matter useful or relevant in considering Defendants' potentially dispositive

motion.

        **III.**     **Plaintiff's Motion to Take the Depositions of Defense Counsel, Supplemental**

        **Motion, and Motion to Compel**

Plaintiff filed this motion alleging that Defendants' counsel participated in an internal

investigation into racial profiling within the McHenry County Sheriff's Department.  The parties

seem to agree that the discovery process from this case served as the impetus for the internal

investigation.  The investigation itself has become the subject of contention throughout the

discovery process in this case.  After certain information about the marking of racial profiling

information on MCSO traffic tickets came to light, Defendant Nygren in his role as Sheriff,

ordered that the investigation be conducted by a commander and a sergeant from the MCSO.

During the depositions of the commander and sergeant, each revealed that counsel for the

Defendants, namely Mr. Sotos and Ms. Barton, assisted in the investigation in some fashion.

Counsel for Defendants admit to having had an advisory role with the MCSO as it conducted the

investigation. Plaintiff now believes that Defense counsels' participation in the investigation

warrants an order allowing him to take their depositions as a part of discovery in this case.

Depositions of opposing counsel have the potential to create numerous problems in the

litigation process. "Courts have historically looked with disfavor on attempts to depose

opposing counsel." *WMH Tool Group, Inc. v. Woodstock Intern., Inc.*, 2009 WL 89935, *1

(N.D. Ill. Jan. 14, 2009) (quotations omitted). Such relief "should only be employed in limited

circumstances." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). In *Shelton*,

the Eighth Circuit enumerated a standard that limits the deposition of trial counsel to

circumstances where the party seeking the deposition has shown that: "(1) no other means exist

to obtain the information other than to depose opposing counsel; (2) the information sought is

relevant and not privileged; and (3) information is crucial to the preparation of the case."

*Shelton*, 805 F.2d at 1327. These factors have been interpreted to require "exhaustion of all

other reasonable alternatives before a party should seek to depose his opponent's attorney." *M

& R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992).

Courts within this district have in many instances relied on the factors from *Shelton* in

evaluating requests to depose trial counsel. *See, e.g., Marco Island Partners v. Oak Dev. Corp.*,

117 F.R.D. 418, 420 (N.D. Ill. 1987). There have been circumstances, however, where courts

have found that the *Shelton* factors do not apply because the topics of deposition relate to a

"prior underlying matter that is relevant to the current litigation." *WMH Tool Group, Inc.*, 2009

WL 89935 at *2 (citations omitted).  Here, the court finds that Defense counsels' involvement in the internal investigation is a current matter that is relevant to this case.  The court will apply the *Shelton* factors.

The court finds that the relevant information Plaintiff is seeking is available from other sources and has already been produced.  Specifically, Plaintiff has a copy of the report from the internal investigation.  Plaintiff has had the opportunity to depose Defendant Nygren and the two individuals charged with conducting the investigation.  The court finds that Plaintiff has had ample opportunity to conduct discovery on the internal investigation.  For this reason, Plaintiff's motion does not satisfy the first prong of the *Shelton* factors.  Plaintiff's motion for miscellaneous relief seeking the depositions of opposing counsel is denied.

Plaintiff also filed a motion to compel and supplemental motion to compel discovery as to the communications between defense counsel and their clients relating to the internal investigation.  The reason Plaintiff seeks these communications is to support his motion to compel the depositions of opposing counsel, and potentially, to prepare for opposing counsels' depositions.  For the same reasons discussed herein, Plaintiff's motion and supplemental motion to compel are denied.

### IV.    Defendants' Motion to Re-Convene the Deposition of Scott Milliman

Defendants filed a motion to re-convene the deposition of Scott Milliman ("Milliman"). Milliman is a recently terminated deputy of the MCSO who gave a deposition in this case on November 23, 2010.  The parties held a continued deposition with Milliman on August 18, 2011. At the continued deposition, Milliman refused to answer certain questions about testimony he gave at the initial deposition regarding an FBI investigation initiated by his complaints.

Milliman also refused to discuss the details of any conversation he may have had with a psychologist or psychiatrist. Milliman's counsel made objections based on relevance and claimed the "law enforcement privilege."

Milliman filed complaints with the FBI in 2007 regarding Defendant Nygren being engaged in certain criminal conduct. At a deposition, Milliman explained the nature of his complaints to the FBI. Defendants want to go into more detail with Milliman.

The court notes that Defendants were able to learn about the existence and general nature of Milliman's complaints to the FBI during his deposition. Defendants were able to follow-up with questions about the types of criminal activity Milliman alleged occurred. Defendants were able to subpoena information from the FBI that reveals some of the circumstances surrounding the investigation based on Milliman's information. The additional questions Defendants want answered are very specific, such as the names of the FBI agents involved in conversations, and what specifically Milliman told the agents. Defendants similarly asked what Milliman told a psychiatrist or psychologist regarding his allegations.

Generally, a deponent should proceed to answer a question during a deposition even after an objection has been noted on the record. FED. R. CIV. P. 30(c)(2). A deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). *Id.* Rule 30(d)(3) of the Federal Rules of Civil Procedure allow the court to terminate a deposition or limit its scope and manner as provided in Rule 26(c). FED. R. CIV. P. 30(d)(3). Counsel for the deponent asserted the "law enforcement privilege" at the deposition, and also objected as to the relevance of the questions. The transcript reveals that Plaintiff's counsel offered to contact the court to resolve

the dispute, but Defense counsel opted to move on to other questions.  Defendant now argues

that the "law enforcement privilege" could not be asserted by the deponent, and that a relevance

objection does not justify an instruction not to answer.  Based upon the circumstances, the court

takes deponent's counsel's attempts to limit testimony as a motion for a Rule 26(c) protective

order, and will evaluate it as such.

There are a number of circumstances surrounding Milliman's continued deposition that

the court will consider.  First, Milliman is a non-party to this case.  He was accompanied to the

deposition by his personal attorney, who had not appeared in this case prior to the deposition.

Second, Milliman was apparently placed on administrative leave and eventually terminated by

the MCSO.  This termination may have been related to his testimony.  Third, Milliman and

Defendants acknowledge that the circumstances could at least potentially lead to future

litigation.  Finally, the FBI materials submitted as a sealed exhibit contained redactions as to

certain details.  The Assistant United States Attorney on behalf of the FBI asserted an

investigatory privilege over the contents of reports and certain information provided by

Milliman.  It appears that the deponent's counsel was attempting to comply with the spirit of a

law enforcement privilege in good faith.  Objections were lodged to questions about the specific

names of FBI agents, locations of events, and specific investigative methods being used in a

potentially ongoing investigation.

The court takes Milliman's objections as a motion for a protective order under Rules

37(d)(3) and 26(c), and that order is granted.  The court finds that counsel for Defendants have

already explored all possible relevant areas to a sufficient degree.  Concluding Milliman's

deposition at this time also alleviates the concern that the focus of his deposition may turn away

11

from this case and toward potential litigation between Milliman and the MCSO. For the foregoing reasons, Defendants' motion to compel is denied.

**E N T E R:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

**DATE**: October 18, 2011